UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WARREN L. WILLIAMS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:17-cv-03520-WTL-TAB |
| OFFICER STROUT (OR STOUT), | ) ) ) |
| Defendant. | ) |

**Entry Discussing Defendant's Motion for Summary Judgment**

In this civil action, plaintiff Warren L. Williams, an Indiana prisoner incarcerated at the New Castle Correctional Facility, alleges that, while he was incarcerated at the Reception Diagnostic Center ("RDC"), the defendant violated his Eighth Amendment rights when the defendant closed his hand in his cell door.

Presently pending before the Court is the motion for summary judgment filed by the defendant on May 2, 2018. Dkt. No. 27. The defendant argues that the claims alleged against him are barred under the exhaustion provision of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, that requires a prisoner to first exhaust his available administrative remedies before filing a lawsuit in court.

Mr. Williams filed a response and the defendant filed a reply. The motion is now ripe for review.

**I. Standard of Review**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

## II. Material Facts

At all times relevant to his claims, Mr. Williams was incarcerated at the RDC. Because he was transferred to the New Castle Correctional Facility ("New Castle") shortly after the alleged event took place, his efforts to grieve the incident were initiated at New Castle. The grievance process requires an inmate first to attempt to resolve his grievance informally by contacting staff to discuss the matter or incident subject to the grievance. Second, if the inmate is unable to obtain a resolution of the grievance informally, he may submit a formal grievance. Formal grievances are screened to determine whether they meet the requirements set out in the grievance policy. If deemed inadequate, the grievance is returned the inmate with the reason for its rejection. Adequate grievances are reviewed and a response is provided to the inmate. Third, if the grievance is not resolved in a manner that satisfies the offender, he may submit an appeal. Exhaustion of the grievance process requires completion of all three of these steps.

Mr. Williams did not file any grievances regarding his claim while he was incarcerated at RDC because he felt threatened. Approximately two months after his transfer to New Castle, he submitted two informal grievances regarding the incident at RDC. Those grievances were rejected as untimely. Mr. Williams then submitted a formal grievance regarding the incident. It was returned to him as inadequate because the event occurred at RDC, rather than at New Castle, and because monetary relief cannot be provided through the grievance process. Mr. Williams then resubmitted the same grievance to RDC. It was again rejected and returned to Mr. Williams, this time because inmates cannot request staff discipline as a remedy and because tort claims are not

grievable issues.[1] The returned grievance gave Mr. Williams five days to correct these two problems. He did not resubmit the grievance or file any other grievances or grievance appeals regarding the incident at RDC.

### III. Discussion

The Prison Litigation Reform Act ("PLRA'") requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004).

"An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An administrative procedure is unavailable when 1) the process operates as a "simple dead end," 2) when it is so opaque that it is incapable of use, and

---

[1] The defendant acknowledges that any timeliness defense was waived when Mr. Williams' grievance was rejected on other grounds. Dkt. No. 32, p.3.

3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. For example, if an inmate requests a grievance from a staff member who, pursuant to the grievance policy is required to provide one upon request, and the request is denied, the administrative process has been rendered "unavailable." *Hill v. Snyder*, 817 F.3d 1037, 1041 (7th Cir. 2016).

It is the burden of the defendant to establish that the administrative process was available to Mr. Williams. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendant must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). To attempt to meet that burden, the defendant argues that Mr. Williams' grievance was rejected and that he failed to correct the issue and resubmit his grievance.

The grievance policy and relevant case law are clear—prison personnel cannot reject an inmate's grievance because he seeks monetary damages or a tort claim, and then successfully argue that he failed to exhaust his available administrative remedies. Inmates are required to exhaust administrative remedies even when they seek a remedy that is not available through the administrative process. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (citing *Booth v. Churner*, 532 U.S. 731 (2001)). But when the grievance is rejected because the remedy sought is not available through the administrative process, then that administrative remedy is unavailable to the inmate.

Although the grievance policy is clear that grievances are not to be rejected based on the remedy sought, except for staff discipline and other exceptions not applicable here, the plaintiff's grievance was rejected both because it sought staff discipline and because a "tort claim is not a grievable issue." Dkt. No. 27-1, p. 38. This response to the plaintiff was in direct conflict with the grievance policy, which does not provide for the rejection of a grievance on this basis and which

provides that reporting a tort claim to the Indiana Attorney General's Office is one of the available remedies under the grievance policy. *Id.* at pp. 14-15. The defendant argues that all the plaintiff had to do was remove his request for staff discipline and the grievance would have been accepted. Dkt. No. 32, p. 4. Had the plaintiff removed his request for staff discipline and resubmitted his grievance, he had no reason to believe it would then be accepted since it had also been rejected because it sought money damages and because it contained a tort claim.

With this record, there is no reason this motion for summary judgment should have been filed. The plaintiff was incorrectly told his issue was not grievable. This misrepresentation rendered the grievance process unavailable. *Ross*, 136 S. Ct. at 1859-60. Mr. Williams had no duty to proceed with the grievance process at that point. For these reasons, the defendant's motion for summary judgment, Dkt. No. 27, is **denied.**

### Rule 56(f) Notice and Further Proceedings

The current record before the Court shows that the plaintiff is entitled to summary judgment on the defendant' affirmative defense of exhaustion. Therefore, pursuant to Rule 56(f)(1), the Court gives the defendant notice of its intent to grant summary judgment in the plaintiff's favor on this issue. The defendant shall have **through September 21, 2018**, in which to respond to the Court's proposal. Alternatively, the defendant may withdraw his affirmative defense by this date.

**IT IS SO ORDERED.**

Date: 9/11/18

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

David C. Dickmeyer
INDIANA ATTORNEY GENERAL
David.Dickmeyer@atg.in.gov

Christopher L. Garrison
GARRISON LAW FIRM
chris@garrisonlegal.com

Andrew Scheil
INDIANA ATTORNEY GENERAL
Andrew.Scheil@atg.in.gov

Joshua N. Taylor
GARRISON LAW FIRM LLC
josh@garrisonlegal.com